

# THE ATTORNEY GENERAL
## OF TEXAS

May 21, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Lowell C. Holt          Opinion No.   JM-705
Criminal District Attorney
P. O. Box 730                     Re:  Whether a county is required to
Gilmer, Texas  75644              reimburse a state-supported public
                                  hospital for indigent health care of
                                  a resident of that county

Dear Mr. Holt:

You ask whether a county that does not have a public hospital and is not located within a hospital district is required to reimburse The University of Texas Health Center at Tyler for health care of an indigent resident of the county who was treated at the Health Center for a heart condition. You advise us that the person was referred by the county's "contract doctor" to the Health Center for care.

Title 2 of the Indigent Health Care and Treatment Act, article 4438f, V.T.C.S., applies to and determines health care services and assistance for a person who does not reside in the area that a public hospital or hospital district has a legal obligation to serve. Art. 4438f, §2.01. Each county shall provide the health care assistance prescribed by Title 2 to each eligible resident of that county who does not reside within an area served by a public hospital or hospital district. Id. §§2.02, 3.01. A county may arrange to provide health care service through a local health department, a publicly owned facility, a contract with a private provider, or through the purchase of insurance for eligible residents. Id. §3.02. Also, a county may select one or more providers of health care services and, when medically appropriate, require its indigent residents to obtain care from a mandated provider. Id. §3.03. Except as otherwise provided by Title 2, and assuming that there has been compliance with the requirements of that title concerning the provision of health care services by mandated providers and notification of and approval from the county for emergency and nonemergency services, a county is responsible for either paying for or for providing health care services for which payment is not otherwise available. See Id. §§3.03, 3.04, 3.05, 4.01(d).

A county is not liable under Title 2 for health care services provided by a hospital to an eligible resident of the county if the hospital providing the services has a Hill-Burton or state-mandated

obligation to provide free services and the hospital is in noncompliance with the obligation. Id. §4.01(c). Also, a county is not liable under Title 2 for the cost of a mandatory health service that is in excess of the payment standards for that service established by the Texas Department of Human Services or in excess of the limitation for each year prescribed by section 4.03 for each eligible resident of the county. See id. §4.02.

In summary, and subject to the provisos and limitations in Title 2, a county is liable for payment for health care services provided under Title 2 by any provider to an eligible resident of the county who does not reside in an area served by a public hospital or hospital district.

It has been suggested that heart disease is a chest disease and, therefore, that the state, instead of the county, is responsible by statute for the expense of treatment of a heart condition provided at The University of Texas Health Center at Tyler for an indigent resident of a county that does not have a public hospital or hospital district. It is our opinion that the legislature has not provided that the medical care of indigent patients with heart disease is an expense to be paid by the Tyler Health Center out of state funds.

The hospital in question originally was a state tuberculosis hospital which treated only tuberculosis cases. In 1977, the legislature transferred the East Texas Chest Hospital to the Board of Regents of The University of Texas System with authority to change its name and use it as a teaching hospital. See V.T.C.S. art. 3201a-4, §§2, 5. The name was changed to The University of Texas Health Center at Tyler. Sections 1 and 7 of article 3201a-4 state the legislature's intention that the hospital continue to serve as a state tuberculosis hospital under the terms and provisions of the Texas Tuberculosis Code, article 4477-11, V.T.C.S., and that The University of Texas System provide and pay for the care and treatment of tuberculosis patients in that hospital out of funds appropriated by the legislature for the hospital to use for that purpose. Section 6 of article 3201a-4 provides also that:

> It shall continue to be the policy of the State of Texas to provide a program of treatment of the citizens of this state who are affected with chest diseases, and in pursuance of that policy the East Texas Chest Hospital shall among other functions continue to serve as the primary facility in this state to conduct research, develop diagnostic and treatment techniques and procedures, provide training and teaching programs, and provide diagnosis and treatment for both inpatients and outpatients with respect to all chest diseases.

Section 9 of the Texas Tuberculosis Code provides in part that:

Patients admitted to state chest hospitals shall be two (2) classes:

(1)  Indigent public patients and

(2)  Non-indigent public patients.

(a)  Indigent public patients are those who possess no property of any kind nor have anyone legally responsible for their support, and who are unable to reimburse the state. This class shall be supported at the expense of the state.

It is our opinion, however, that the provisions of the Texas Tuberculosis Code only apply to the care and treatment of persons with tuberculosis. Senate Bill No. 868 of the Sixty-sixth Legislature in 1979 amended section 9 of the Code by changing the name "tuberculosis hospitals" to "chest hospitals." The caption of Senate Bill No. 868 describes that bill as "an Act relating to the diagnosis and care of persons having tuberculosis." Section 2 of the Tuberculosis Code expressly states that "[i]t is the purpose of this Code to provide care and treatment for those afflicted with turberculosis, to facilitate their hospitalization, and to enable them to obtain needed care."

We conclude that the provisions of the Tuberculosis Code, including section 9, are applicable to the treatment of persons with tuberculosis and do not apply to the treatment of heart conditions, regardless of whether "heart conditions" might properly be called "chest diseases" in other contexts. Under both article 3201a-4 and the Tuberculosis Code, the treatment of tuberculosis patients in the Health Center at Tyler is an expense of the Health Center to be paid from state funds. Neither of those statutes nor any other statute of which we are aware mandates treatment at the Health Center at state expense for indigent persons suffering from a heart condition. Hence, a county that arranges for care of a heart condition for its indigent resident at the Health Center is responsible for payment for such services under Title 2 of the Indigent Health Care and Treatment Act.

S U M M A R Y

A county which is liable for health care assistance under Title 2 of the Indigent Health Care and Treatment Act is responsible for paying for or for providing health care services for which payment is not otherwise available. The statutes providing for care and treatment of tuberculosis in

The University of Texas Health Center at Tyler for indigent patients at state expense do not apply to heart conditions. A county which arranges for care at the Health Center for a heart condition of an indigent resident is responsible for paying the Health Center for treatment of the heart condition.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General